# Allen, Admr. *et al. v.* Caylor.

*Bill in Equity to enforce Trust in Lands.*

1. *Parol agreement for purchase of lands not enforceable.*—Where the purchaser of land, taking title in his own name, obtains from a third person a certain amount of money, which he pays on the purchase money, under a parol agreement with said third person, that he shall have an interest in the land to the extent of the amount of money paid by him as part of the purchase money, such agreement is only for the purchase of an interest in the lands, and being in parol, is not enforceable.

2. *Same.*—Where the purchaser of land, who takes title in his own name, is unable to pay all of the amount of the purchase money and applies to a third person for the balance, promising in parol that said person shall be interested in the lands to the extent of the sum advanced to pay the balance of the purchase money, and under such request and promise the money is paid, such agreement is only for the purchase of an interest in said lands and, being in parol, is not enforceable.

3. *Trusts; when resulting trust does not arise.*—Where the purchaser of land, taking title in his own name obtains from a third person a portion of the purchase money which is not an aliquot part

[Allen, Admr. *et al.* v. Caylor.]

of the whole, under a parol agreement that such third person should have an interest in the land to the extent of the money furnished, a resulting trust in said lands does not arise in favor of the person so furnishing the money.

4. *Same; conventional subrogation.*—One, who at the instance and request of the purchaser of land and under an agreement that he shall have a lien for his reimbursement, pays off a part of the purchase money due, for which the vendor had a lien is subrogated in respect of the land to the rights of the vendor; and the rights so acquired can be enforced in a court of equity, although the agreement under which the purchase money was paid rested in parol. (*Chapman v. Abraham*, 61 Ala. 108, explained and limited.)

5. *Same; when fiduciary trust not created.*—Where the purchaser of lands takes the money of a third person which came into his possession, but which was not loaned nor delivered to him, and applies such money to the payment of the purchase money on said lands, no fiduciary trust is thereby created in favor of the person to whom the money belonged; there being no fiduciary relation existing between the purchaser and such third person.

6. *Equity pleading; effect of alternative grounds of relief as set forth in bill.*—Where a bill in equity avers several grounds of relief which are alternative statements of one matter or transaction, each alternative must be sufficient to give relief or the whole bill is bad; but such statements do not render the bill multifarious.

7. *Vendor's lien; personal representative of deceased vendee proper party in bill to enforce same.*—The personal representative of a deceased vendee of land is a proper party to a bill filed by one claiming, under an agreement with the deceased vendee, to be subrogated to the rights of the vendor as to his lien upon said lands.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. JERE N. WILLIAMS.

The facts of the case are sufficiently stated in the opinion.

PARKS & SON, for appellant, cited; *Tyson v. Brown*, 64 Ala. 244; 68 Ala. 98; 69 Ala. 598; 70 Ala. 377; *Preston v. McMillan*, 58 Ala. 84; Code of 1886, § 1845; *Patton v. Beecher*, 62 Ala. 579; *Chapman v. Abrahams*, 61 Ala. 108; *Simmons v. Walker*, 18 Ala. 664.

[Allen, Admr. *et al.* v. Caylor.]

HUBBARD & HUBBARD, *contra*, cited, *Dooly v. Villalonga*, 61 Ala. 129; *Erwin v. Ferguson*, 5 Ala. 158; 24 Amer. and Eng. Ency. of Law, 290, "Conventional Subrogation" and 294, note, "Subrogation to Vendor's Lien;" Sheldon on Subrogation, 19 p. 28 and 247–8, p. 371; 57 Ala. 435; *Bolman v. Lohman*, 74 Ala. 507.

HEAD, J.—The bill, filed by the appellee, states in the alternative four grounds for relief. Stephen Jackson purchased a lot of three acres of land at the price of $280, taking title to himself, and lived thereon until his death. The appellee, Mrs. Caylor, in her first ground, alleges that she let Jackson have one hundred dollars which he paid on the purchase money of the lot, at his request, under agreement with him that she should have an interest in the lot to the extent of her money that was paid for the same, and she says the deed should have been taken in the names of both.

Her second ground is, that Jackson being unable to pay $100 of the purchase money applied to her for that sum to pay the same, promising that she should be interested in the land to the extent of the sum she might advance to pay the purchase money; that she paid off and discharged one hundred dollars of the purchase money under said request, agreement and promise, which has never been repaid to her, and that she is entitled to an interest in the land to the extent of said sum, or that she has a lien on the land to that extent for the purpose of reimbursement.

Her third ground is that after Jackson purchased, and paid $180 of the purchase money of, the land he became unable to pay, or did not have the money to pay, the balance of $100; and requested her to pay the same, stating at the time that she should have a claim or lien on the land for the same; and that she paid the $100 in accordance with such request.

The bill states that all the foregoing agreements, directions and promises were in parol and not in writing.

Her fourth ground is, that Jackson paid $180 of the purchase money; that he came into the possession of $100 of her money, which was not loaned to him nor delivered to him by her; that he took this money and

applied it to the payment of the purchase money of the land, thereby completing the payment of the purchase money.

The administrator and heirs of Jackson are parties defendant, and the prayer is for a decree requiring a conveyance to complainant of an interest in the land to the extent of the amount paid by her, or a decree holding that she has a lien on the land for that sum with interest, and that the land be sold to satisfy the same. Prayer for general relief is added.

The respondents demurred to the bill because of the parol character of the alleged agreements sought to be enforced, and for multifariousness in that it is sought to enforce said express agreements and also to establish an implied trust. The administrator demurs separately that he is not a proper party. The demurrers, which were to the whole bill, were overruled and respondents appeal.

The first and second grounds are clearly nothing more than efforts to specifically enforce a parol agreement for the purchase of an interest in land which cannot be done under our system. They do not show resulting trusts for the reason that complainant merely contributed a sum of money to the purchase, not being an aliquot part of the whole.—*Bibb v. Hunter*, 79 Ala. 351; 10 Am. & Eng. Encyc: of Law, 16.

→ The third shows that the vendor of Jackson had a vendor's lien on the land for $100, which complainant paid off at the request of Jackson and under an agreement with him that she should have a claim or lien on the land for her reimbursement. This ground rests upon what is known as "conventional subrogation." Under that doctrine, a stranger paying off a vendor's lien at the instance of the debtor, and upon agreement that he shall have a lien for his reimbursement, stands in the shoes of the vendor, in respect of the lien. This subrogation is purely conventional; it results directly from the agreement; it is in effect, though not in form, an equitable assignment of the lien for the security of the advance, as in *McMillan v. Gordon*, 4 Ala. 716, where a stranger paying off part of a mortgage debt at the instance of the mortgagor and upon the latter's agree-

ment that a lien would be given him on the mortgaged premises, and that he should be repaid out of the proceeds of the sale, it was held that the payment did not extinguish the mortgage debt, and that the party paying was entitled in equity to a *pro tanto* assignment of the mortgage ; and this, notwithstanding the agreement was not in writing.   So, also, in *Fuller v. Hollis*, 57 Ala. 435, where the vendee of land holding a bond for titles procured Hollis to pay up the balance of purchase money due, agreeing that Hollis should have a lien on the land and should take the deed from the vendor and hold the same as an escrow or security for the amount so advanced to take up the note.   The vendor executed the deed to the vendee and turned it over into the hands of Hollis who held it as agreed.   It was held that Hollis had a lien on the land for the amount paid by him to the vendor.   In these cases, though as to the vendors the debts were really paid, yet by reason of the agreements which were parts and parcels of the transactions and by which third parties were induced to make the payments, a principle of subrogation was applied ; or, reaching the same result, the parties paying were treated as assignees of the vendors' liens.

There are many authorities on this subject fully recognizing this right of substitution, a clear insight into which will be found in 24 Am. & Eng. Encyc. of Law, 290 *et seq.*, where adjudged cases are cited and quoted from.

"Conventional subrogation, as its name imports, results from the agreement of the parties and can take effect only by agreement.   The agreement is, of course, with the party to be subrogated, and, it seems, may be either by the debtor or creditor."—24 Am. & Eng. Encyc. of Law, 292, note.

In a court of equity, a vendor's lien upon land, even like a mortgage on land, is regarded only as a security. Neither, in that forum, is considered an interest in land and either may be assigned in parol, without offending the statute of frauds.   It is a mere equitable chose in action, enforceable in equity by him who is entitled to receive the money it secures.

It must be admitted that *Chapman v. Abrahams*, 61 Ala. 108, very nearly approached, if it was not a case

for the application of the doctrine above expressed, and that it was held that Lockhart, whom the vendee procured to pay off the purchase money, acquired no lien by doing so. The agreement with Mrs. Chapman, the vendee, and her husband, was that if Lockhart would pay the amount due the vendor, they would at the time of the payment, execute to him, Lockhart, a mortgage on the land to secure it. Lockhart advanced the money to make the payment, but it not being convenient to execute the mortgage then, the matter was deferred to a future day. On making the payment, the vendor executed and delivered a deed to Mrs. Chapman, the vendee. The mortgage was afterwards executed by Mrs. Chapman and husband to Lockhart in pursuance of their agreement, who afterwards filed a bill to enforce it, claiming also a vendor's lien and seeking its enforcement. Both demands were denied. STONE, J., said: "The strongest view of the bill which can be taken—the one most favorable to appellant—is that Lockhart paid the money to Clark [the vendor] for and at the request of Mrs. Chapman. This extinguished the debt which Mr. and Mrs. Chapman owed, and created a new debt or legal liability to Lockhart. It was no transfer of the original demand to Lockhart. If such had been its effect, then any defense which Chapman and wife might have against Clark could have been successfully urged against Lockhart. Paying the debt at request, Lockhart became a new creditor on a new consideration and could not be affected by any infirmity in the original consideration ? On such debt *indebitatus assumpsit* would lie in favor of Lockhart, irrespective of the character, form or validity of the debt he had thus extinguished.—1 Chit. Pl. 100, 350. It did not transfer the debt or vendor's lien to Lockhart." There is cited in support of what is said, the cases of *Pettus v. McKinney*, 56 Ala. 41; *Foster v. Athenaeum*, 3 Ala. 302; *Dennis v. Williams*, 40 Ala. 633; *Conner v. Banks*, 18 Ala. 42. The mortgage was held void because the land was the statutory separate estate of Mrs. Chapman.

The cases cited by the court as above stated are as follows : *Foster v. Athenaeum*, simply holds that a surety upon a note given for the purchase money of land paying

[Allen, Admr. *et al.* v. Caylor.]

the note by virtue of his obligation as a surety acquires no lien on the land for reimbursement. Such we believe is the generally received rule. By becoming surety he undertook to pay the note; his payment as effectually discharged the debt as if paid by the principal. He was not brought into the transaction and procured to make the payment by the vendee upon express terms of being subrogated. We think the case can not be considered as an authority against the doctrine of conventional subrogation. *Conner v. Banks*, does not appear to be in point. It merely states *arguendo* in support of the continuance of a vendor's lien, where a transferee of the original purchase money note had taken a new note, that the lien is an incident to the debt and attends upon it until the debt is paid or extinguished, or the lien itself by contract is destroyed. *Dennis v. Williams*, involved no agreement for subrogation in favor of a third party paying the purchase money. The vendee whose note was held by the vendor for purchase money, sold the land to a sub-purchaser taking his note. Subsequently the vendor surrendered to his vendee the latter's note and received from him, in exchange therefor, the sub-vendee's said note, and it was held that the debt due the original vendor was thereby extinguished and with it, of course, his lien as vendor. In *Pettus v. McKinney* the vendor had obtained a decree in chancery subjecting the lands to sale for the payment of the purchase money, and the vendee paid the decree with money borrowed from a third person, giving his note with a mortgage on the land and other property to secure payment of the money borrowed. It was held that the mortgagee, not having taken an assignment of the decree, could not claim to be subrogated to the vendor's rights against the land, but that he must rely alone on his mortgage Subrogation was attempted by the mortgagee to avoid a homestead right subsequently asserted by the widow of the mortgagor; the claim of homestead being good against the mortgage, but not against the asserted vendor's lien, had such existed.

It seems clear that neither of these authorities relied upon to support *Chapman v. Abrahams, supra,* at all conflicts with the cases of *McMillan v. Gordan,* 4 Ala, *supra,*

and *Fuller v. Hollis*, 57 Ala., *supra*. Their facts do not bring them under the doctrine of subrogation now under consideration ; and we can not think the court, in *Chapman v. Abrahams*, intended to conflict with those cases, for no reference is made to them, and the judge who delivered the opinion (Judge STONE) was also the author of the opinion in *Fuller v. Hollis*. We take it that in *Chapman v. Abrahams* the agreement being to *execute a mortgage* for the reimbursement of Lockhart, which was done, the invalidity of the mortgage by reason of the marital incapacity of Mrs. Chapman to make it, was no cause for broadening the agreement in support of the right of subrogation, even if an agreement for subrogation by a married woman, in respect of her separate estate, were not itself likewise void by reason of marital incapacity ; that Lockhart must rely alone on the mortgage he contracted for and took whether valid or invalid, thus bringing the case somewhat within the principle of *Pettus v. McKinney*, *supra*.

We hold, therefore, that the third ground of relief contains equity upon sufficient allegations.

The fourth ground seems to attempt to set up a fiduciary trust, but shows no fiduciary relation whatever between the parties. It is wholly bad.

The several grounds of relief are, manifestly, alternative statements of one matter or transaction. In fact, they are expressly stated in the bill so to be. In such case each alternative must be sufficient to give relief, or the whole bill is bad ; but the demurrers in the case do not raise that objection. It is demurred that the bill is multifarious in that it seeks, in the alternative, to enforce a void parol trust and also an implied trust in lands, and further that it seeks to enforce a verbal mortgage and in the alternative an implied trust. As we have seen the first and second grounds are no more than efforts to enforce specifically an agreement for the purchase of an interest in the lot, the third is for subrogation as herein discussed, and the fourth to establish a fiduciary trust. There is no effort to enforce a parol mortgage on the lot. The assignments of demurrer do not meet the case.

The personal representative is clearly a proper party to the bill.

The decretal order overruling the demurrers is affirmed, and the cause remanded.